QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
Michael D. Powell (Cal. Bar No. 202850)
mikepowell@quinnemanuel.com
Michelle A. Clark (Cal. Bar No. 243777)
michelleclark@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California  94111
(415) 875-6600
(415) 875-6700 (facsimile)

Patrick T. Schmidt (Cal. Bar No. 274777)
patrickschmidt@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
(213) 443-3100 (facsimile)

Attorneys for Plaintiff Google Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE INC.,<br><br>       Plaintiff,<br><br>    v.<br><br>SIMPLEAIR, INC.; JOHN PAYNE;<br>and TIM VON KAENEL,<br><br>      Defendants. | CASE NO. 2:16-cv-3756<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Google Inc. ("Google") seeks a declaration that Google does not directly or indirectly infringe United States Patent No. 9,356,899 (the "'899 Patent"), either literally or under the doctrine of equivalents, and/or that the '899 Patent is unenforceable, as follows:

## NATURE OF THE ACTION

1.      This is an action for a declaratory judgment of non-infringement and unenforceability arising under the patent laws of the United States, Title 35 of the United States Code and the Declaratory Judgment Act.  Google requests this relief because defendant SimpleAir, Inc. ("SimpleAir") has filed four lawsuits claiming that Google infringes some or all of the claims of U.S. Patent Nos. 7,035,914 (the "'914 Patent"), 6,021,433 (the "'433 Patent"), 8,601,154 (the "'154 Patent"), 8,572,279 (the "'279 Patent"), 8,656,048 (the "'048 Patent"), and 8,639,838 (the "'838 Patent") (collectively, the "Previously Asserted Patents") by making and using the Google Cloud Messaging, GCM for Chrome, and Android Cloud to Device Messaging (C2DM) services (collectively referred to herein as "GCM services"), as well as by providing applications ("apps") that use the GCM services. All of the Previously Asserted Patents are from a single patent family,[1] are terminally-disclaimed to the '433 Patent, share a common specification, and are in fact one invention.  SimpleAir has engaged in a pattern of filing successive litigation against Google using the Previously Asserted Patents, despite the fact that both a jury and the Federal Circuit have found that Google does not infringe SimpleAir's claimed invention.

2.      SimpleAir, by and through its outside counsel, have made clear through direct threats to Google's counsel, as well as through SimpleAir's history of serial

---

[1]  Specifically, the '838 and '048 Patents are continuations of the and '433 and '914 Patents and are co-continuations of the previously-adjudicated '279 and '154 Patents.

litigation, that they intend to bring continuous, successive lawsuits against Google until Google takes a license.  Although Google has prevailed on its position that it does not infringe the Previously Asserted Patents, Google now seeks a declaratory judgment of non-infringement and unenforceability regarding the newest patent issued to SimpleAir.

3.     The '899 Patent issued on May 31, 2016 and is a continuation of the Previously Asserted Patents.  The '899 Patent shares the same specification and is also terminally disclaimed to the patent term of the '433 Patent.  A copy of the Issue Notification of the '899 Patent is attached hereto as **Exhibit A**.[2]

4.     The '899 Patent is not infringed and is unenforceable against Google. Google seeks declaratory judgment to that effect so that it may remove from Google's GCM services the haze that SimpleAir's litigation continuously seeks to impose.

## THE PARTIES

5.     Google is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California, 94043.  Google provides GCM services, which allow application developers to send messages from their servers to devices.

6.     On information and belief, SimpleAir is a corporation with its principal place of business in Los Angeles County, California.  Although SimpleAir has alleged in the past that its principal place of business is an office in Plano, Texas,

---

[2]  As of the time of filing, the final version of the issued patent is not publicly available.  Because a patent has been found to issue at 12:01 a.m. Eastern time on its issue date, Google is filing this Complaint in this Court at or near 9:01 p.m. Pacific time on May 30, 2016, which is equivalent to 12:01 a.m. Eastern time on May 31, 2016.  *See Encore Wire Corp. v. Southwire Co.,* No. 3:10-cv-86-BMGL, 2011 WL 833220, at *4 (N.D. Ga. Mar. 4, 2011) (holding that a patent issued at midnight on the date of issuance).

Google is informed and believes that SimpleAir has no employees in Texas.  On information and belief, all of SimpleAir's officers–John Payne, Mike Mirel, Tim von Kaenel, and Seth Weisberg–reside in California, in or around Los Angeles.

7.    On information and belief, John Payne is an individual residing in Los Angeles County.  Mr. Payne is a principal of SimpleAir, Inc. and a named inventor of the '899 Patent.  Mr. Payne has signed and submitted multiple declarations, both individually and jointly with Mr. von Kaenel, to the PTO during the prosecution of the '899 Patent and the Previously Asserted Patents.

8.    On information and belief, Tim von Kaenel is an individual residing in Los Angeles County.  Mr. von Kaenel is a principal of SimpleAir, Inc. and a named inventor of the '899 Patent.  Mr. von Kaenel has signed and submitted multiple declarations, both individually and jointly with Mr. Payne, to the PTO during the prosecution of the '899 Patent and the Previously Asserted Patents.

## JURISDICTION AND VENUE

9.    This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the patent laws of the United States, 35 U.S.C. §§ 100-390.

10.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).

11.    This Court has personal jurisdiction over SimpleAir.  Among other things, SimpleAir has continuous and systematic business contacts with California.  All four of SimpleAir's executives reside in California.  SimpleAir's principal and only business is patent licensing and litigation, and that business is conducted by its executives in or around Los Angeles, its patent prosecutors in Westlake Village, and by its litigation counsel in Santa Monica.  The "nerve center" or place where SimpleAir's officers direct, control, and coordinate SimpleAir's activities is in the Los Angeles area.

12.     This Court also has personal jurisdiction over the individual defendants, Messrs. Payne and von Kaenel, who are named inventors on the '433, '914, '279, '154, '048, '838, and '899 Patents (collectively the "SimpleAir Patents") and are principals of SimpleAir, Inc.  Messrs. Payne and von Kaenel reside in or around Los Angeles County, California.  Messrs. Payne and von Kaenel have personally participated and controlled the prosecution of SimpleAir's patents and its serial litigation against Google.  As set forth herein, Messrs. Payne and von Kaenel also submitted signed declarations with the PTO during prosecution of SimpleAir's patents that included inaccurate and/or fraudulent representations.  As such, Messrs. Payne and von Kaenel individually and collectively are in actual and/or *de facto* control of SimpleAir.

13.     Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c), and 1400(b) because all defendants reside in this District, a substantial part of the events giving rise to Google's claims occurred in this District, and because the defendants are subject to personal jurisdiction here.  In addition, Google is aware of no other jurisdiction in which it could have brought suit against all of the defendants.

## SIMPLEAIR'S HISTORY OF LITIGATION AGAINST GOOGLE

14.     SimpleAir first sued Google in 2011, in Case No. 2:11-cv-00416 filed in the Eastern District of Texas ("*SimpleAir I*").  In *SimpleAir I*, SimpleAir alleged that Google infringed the '914 and '433 Patents, accusing Google's GCM services. SimpleAir dismissed its infringement allegations as to the '433 Patent before trial with prejudice.  With respect to the '914 Patent, SimpleAir maintained that the asserted claims encompassed all messaging technologies and was not limited to those wherein the recipient could receive messages whether it was "online or offline" to the Internet.  Based on this erroneous construction, SimpleAir prevailed at its first trial.  However, on appeal, the Federal Circuit reversed the finding, held that the claim construction SimpleAir had advocated was wrong as a matter of law

1    and, thus ordered that the District Court in the Eastern District of Texas enter

2    judgment of non-infringement for Google as its GCM services did not practice

3    SimpleAir's invention.  A copy of the Federal Circuit's opinion is attached as

4    **Exhibit B**.

5           15.    In holding that the GCM services do not use SimpleAir's invention, the

6    Federal Circuit relied heavily on the disclosure in the specification and refused to

7    countenance SimpleAir's argument that language it added to its claims in 2004

8    (which the Federal Circuit noted was "eight years after the 1996 priority date," *id*. at

9    10) could serve to broaden the scope of its patent protection beyond the invention

10   clearly contemplated by the specification.  The Federal Circuit stated:

11

12          The district court construed the larger phrase— "whether said
13          devices are online or offline from a data channel associated with
            each device"—to mean "whether the remote computing devices are
14          or are not connected via *the Internet* or another online service *to a*
            *data channel* associated with each computing device at the time the
15          preprocessed data is received by the receivers." J.A. 140 (emphases
            added). The court explained that "constru[ing] the data channel to
16          merely be the device's connection to the Internet" would "render the
            additional language [i.e., 'from a data channel associated with each
17          device'] redundant." J.A. 139.
18

19          **The district court's construction is incorrect**. It is true that
20          "interpretations that render some portion of the claim language
            superfluous are disfavored." . . .  The preference for giving meaning
21          to all terms, however, is not an inflexible rule that supersedes all
            other principles of claim construction. . . . As we have explained,
22          claims must always be read in light of the specification. . . .
23          **Importantly, the person of ordinary skill in the art is deemed to**
            **read the claim term not only in the context of the particular**
24          **claim in which the disputed term appears, but in the context of**
            **the entire patent, including the specification**." *Id*.  . . . .
25

26          The patent explains that, at the time of invention (i.e., 1996),
27          computer users could connect to information sources such as the
28

COMPLAINT

Internet using a modem. '914 patent col. 3 ll. 30–31, col. 7 ll. 27–28.
Modems were known to enable communication over telephone lines.
*Id.* col. 10-ll. 55–56, col. 11 l. 9. . . . By transmitting information
wirelessly via the central broadcast server, *id.* col. 6 ll. 40–41, "***the
present invention***" enables "**remote computer 14 [to] receive
information instantly—*even while it is off-line* (*i.e., not connected
to the Internet* or some other on-line service),**" *id.* col. 7 ll. 4–7
(emphases added). "Thus, a user has the ability to receive 'on-line'
information even when the user is 'offline.'" *Id.* col. 7 ll. 7–9.

***

In light of this context, a [person having ordinary skill in the art] at
the time of invention would understand that **a key aspect of the
invention is the ability of a remote device to receive notifications
even when it is not connected to the Internet** by traditional means.
*See also id.* col. 2 ll. 51–54 ("[T]*he present invention* . . . provides a
system and method for data communication connecting on-line
networks with online and *off-line computers*." (emphases added)).
Therefore, the claim term "whether said devices are online or offline
from a data channel associated with each device" is properly
construed to mean "whether said devices are or are not connected to
the Internet (or some other online service) via a data channel
associated with each device."

Ex. B at 15-17 (italics in original; bolding added by author).

16.     In 2013, while *SimpleAir I* was pending, SimpleAir again sued Google
in the Eastern District of Texas, asserting that Google's GCM services infringed
U.S. Patent No. 8,572,279 (the "'279 patent"), Civil Case No. 13-cv-00937.  A few
months later, SimpleAir filed a third lawsuit against Google, accusing the GCM
services of infringing yet another related patent, the '154 Patent, as well as the '279
Patent, Civil Case No. 14-cv-00011.[3]  These lawsuits (collectively, "*SimpleAir
II/III*") were consolidated for all purposes.

------------------------

[3]   SimpleAir has not provided any explanation for bringing two successive
lawsuits based on the '279 Patent.  Instead, in response to Google's motion to
dismiss the duplicative claims, SimpleAir simply filed an Amended Complaint and
agreed to consolidate the actions.

17.     On the eve of trial in *SimpleAir II/III,* SimpleAir dismissed its infringement allegations as to the '154 Patent with prejudice after Google expended time and resources defending against SimpleAir's infringement claims.

18.     SimpleAir, however, proceeded to trial on the '279 Patent wherein the jury returned a verdict of in Google's favor of no infringement.  A copy of the jury verdict sheet is attached as **Exhibit C**.  A copy of the final judgment entered in the *SimpleAir II/III* litigation is attached as **Exhibit D**.

19.     Less than six months after the jury's verdict of non-infringement in *SimpleAir II/III*, and just eight days after the Federal Circuit's ruling of non-infringement as a matter of law in *SimpleAir I*, SimpleAir sued Google for a fourth time, in Case No. 2:16-cv-388, filed in the Eastern District of Texas ("*SimpleAir IV*").  In *SimpleAir IV*, which is currently pending, SimpleAir alleges that Google infringes the '048 and '838 Patents, accusing Google's GCM services.  The '048 and '838 Patents share a specification with, and are continuations in the same family as, the '914 and '279 patents which Google has already been found not to infringe.[4]

20.     An immediate, real, and justiciable controversy exists between Google and SimpleAir as to whether Google infringes the '899 Patent, which recently issued and which shares a specification with, and is part of the same family as, the Previously Asserted Patents.  Like the Previously Asserted Patents, the '899 Patent is a continuation of the '433 Patent and is subject to a terminal disclaimer to preserve its patentability (over a rejection for double-patenting).

---

[4]  Google has filed a motion to dismiss the *SimpleAir IV* action on grounds of claim preclusion and the *Kessler* doctrine in view of the two prior dismissals with prejudice and the two prior judgments finding that Google's GCM service does not practice SimpleAir's sole invention that has now been strategically spread among hundreds of claims across numerous continuation patents.  *SimpleAir, Inc. v. Google, Inc.*, 2:16-cv-00388-JRG, Dkt. 17 (E.D. Tex. May 17, 2016).

21.     In communications relating to the prior litigations, counsel for SimpleAir represented to counsel for Google that SimpleAir had additional patents and expressly threatened to continue suing Google on the additional patents.  Based on these conversations and SimpleAir's previous practice of bringing additional lawsuits against Google whenever new patents issue, Google fully expects SimpleAir to assert the '899 Patent against it in future litigation.

## SIMPLEAIR OBTAINED THE '899 PATENT THROUGH FRAUD ON THE PATENT OFFICE

22.     SimpleAir committed at least two (2) separate affirmative acts and/or knowing omissions during prosecution of the '899 Patent, which together or individually, constitute inequitable conduct.  First, SimpleAir knowingly and intentionally included five (5) named inventors on the '899 Patent, despite being well aware that only one individual, Mr. John Payne, could plausibly be considered an inventor of the claimed invention.  In addition, despite having disclosed substantial litigation material to the U.S. Patent and Trademark Office ("PTO") in various IDS's when such material was helpful to SimpleAir's position, it intentionally omitted the Federal Circuit opinion circumscribing the scope of SimpleAir's invention to systems and methods that allow remote devices to receive messages/notifications whether they are online or offline from the Internet.

### SimpleAir Failed To Identify The Real Inventor Of The '899 Patent[5]

23.     SimpleAir named the same inventors on the '899 Patent that it had

---

[5]   The allegations contained herein are based on public disclosures during the pretrial conferences and trials in *SimpleAir I* and *SimpleAir II/III*.  The deposition transcripts of Mr. Payne were designated by SimpleAir pursuant to the protective order entered in *SimpleAir II/III* and Google reserves the right to seek leave to cross-use the testimony and other evidence from the prior litigations in this case.  However, no Confidential or Highly Confidential – Attorneys Eyes Only material was used to prepare or is reflected in the allegations contained herein.

named on each of the previously-issued patents in this family:  Messrs. Payne, von Kaenel, Wang, Odell, Starr, and Katz.  SimpleAir did so, however, despite its awareness during the prosecution of the application leading to the '899 Patent that none of the inventors but one contributed any of the claimed inventive material and that the rest of the inventors were not properly named.  Specifically, SimpleAir failed to inform the PTO that none of the named inventors other than Mr. Payne contributed to the conception of the claimed invention.

24.     In April 2015, Mr. Payne testified that he alone conceived of each element of the claims of the patents asserted in *SimpleAir II/III* (which relate to the same invention as the '899 Patent), and that he did so before ever discussing the subject matter of the invention with any of the other five named inventors on the patents.  *See* Dkt. 316 (10/1/2015 Tr. at 17:13-28:18, 34:1-42:13 (public versions)).  Mr. Payne testified that only **after** conceiving of the claims did he disclose the ideas to other individuals named on the patents.  *Id.*  Indeed, at least two of the named inventors were not even employees of the original assignee of the invention at the time of alleged conception and, thus, could not plausibly have contributed to the conception of the invention as is required under the patent law in order to be joined as an inventor.  *Id.*

25.     "[E]ach person claiming to be a joint inventor must have contributed to the conception of the invention." *Acromed Corp. v. Sofamor Danek Grp., Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001).  Consequently, **all named inventors other than Mr. Payne are misjoined** and the '899 Patent is invalid due to the incorrect inventorship.  35 U.S.C. § 256 (2000); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350 (Fed. Cir. 1998).[6]

---

[6]  In *SimpleAir II/III*, Google sought leave to file a summary judgment motion on the issue of improper inventorship, but its request was denied.  Subsequently, SimpleAir sought to strike the portion of Google's expert report addressing the
(footnote continued)

COMPLAINT

26.     SimpleAir has not presented any sworn testimony or other evidence to refute or explain Mr. Payne's prior sworn testimony that he alone conceived of the entire invention reflected in the '279 and '154 Patents.  And because the '899 Patent is a continuation of the '279 and '154 Patents, share the same inventors, and are terminally disclaimed to those patents, the misjoinder of the five additional named inventors carries over to the '899 Patent.

27.     Although SimpleAir has been on notice of the inventorship error since at least May 2015, SimpleAir continued to prosecute the application that led to the '899 Patent to issuance without any attempt to cure the improper inventorship. Moreover, during the prosecution of the '899 Patent, each individual named inventor submitted signed declarations that they were inventors of at least one claim of the patent.  *See* **Exhibit E** (Oath and Declaration).  These declarations were each false, because no individual besides Mr. Payne could have invented any of the claims of the patents.  Each of the declarants (and/or their agents), including Mr. Payne, knew these were false statements.

28.     SimpleAir had every incentive to hide the material misrepresentations by the putative inventors.  Had SimpleAir attempted to fix the inventorship problems during prosecution, it would have highlighted the copious number of false

_____

improper inventorship issues and sought *in limine* to preclude Google from asserting the inventorship defense at trial to the jury.  Although Google only learned the truth about SimpleAir's improper inventorship on April 22, 2015, and although Google disclosed the basis for its inventorship defense during the fact discovery period provided in the trial court's scheduling order, the trial court granted SimpleAir's motions and precluded Google from pursuing the inventorship defense at trial on the ground that Google had not timely disclosed the defense to SimpleAir.  The trial court, however, left open the option of allowing Google to assert its inventorship theories as the basis for inequitable conduct after trial; as discussed above, this option was unnecessary because the jury returned a verdict exonerating Google of all of SimpleAir's infringement claims.

and fraudulent statements that SimpleAir has submitted to the PTO over the last decade to maintain the patentability of its continuations. By way of example, but not limitation, inventor John Payne and putative inventor Tim von Kaenel submitted a "joint" declaration during reexamination of the '914 Patent, to which the '899 Patent claims priority. The joint declaration, in which the individual declarants purported to corroborate each other's testimony, was submitted for the purpose of swearing behind a potentially invalidating prior art reference. It included details regarding the Air Media Live product and business which SimpleAir relied on to overcome the Examiner's rejection based on the prior art and to establish that the claimed subject matter should be entitled to the priority date of the related provisional application. On information or belief, if the Examiner had been aware that the declaration contained knowingly false statements (*e.g.*, mis-identifying Mr. von Kaenel as a real inventor), he would not have afforded the declaration any substantial weight in allowing the '914 Patent to issue. This is just one example where SimpleAir relied heavily on statements by an incorrectly named inventor to salvage its claims. SimpleAir has submitted declarations from the incorrectly named inventors in every single prosecution of its numerous continuations and each of these submissions was both material and knowingly inaccurate.

29.   As the Federal Circuit has instructed, submitting a false declaration during a patent's prosecution "is exactly the sort of 'affirmative act[ ] of egregious misconduct' that renders the misconduct 'material.'" *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1344 (Fed. Cir. 2013) (alteration in original) (quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011) (en banc)). In addition, the Federal Circuit has also found that—as a critical requirement for obtaining a patent—inventorship is material. *PerSeptive Biosystems Inc. v. Pharma Biotech Inc., 225 F.3d 1315, 1321-2 (Fed. Cir. 2000)*; *see also Oreck Holdings, LLC v. Dyson, Inc.*, 434 F. Supp. 2d 385, 400 (E.D.Tex. 2006) (citing

COMPLAINT

*PerSeptive* and noting that "[i]nventorship is material for purposes of an inequitable conduct analysis"). Had the PTO learned of the SimpleAir "inventors'" multiple false declarations during the prosecution of the '914, '433, '279, '154, '048, '838, and '899 Patents, it would have found those false statements to be material to patentability and would have refused to issue the patents. Thus, each of these patents is now rendered unenforceable as a result of the fraud that was perpetrated on the PTO.

### SimpleAir Withheld Material Evidence Regarding The Appropriate Scope of Its Invention And Patent Claims

30.    Not only did SimpleAir intentionally withhold information material to the inventorship of the '899 Patent claims during prosecution, but it also withheld material information regarding the appropriate claim scope.

31.    For example, SimpleAir filed the application leading to the '899 Patent on July 23, 2014. On November 6, 2014, the Examiner rejected all claims of the application for double patenting, in light of the ancestor patents, including the '914 and '279 patents discussed above. In response, on November 16, 2014, SimpleAir filed a terminal disclaimer. Throughout the prosecution, SimpleAir continued to submit prior art (including litigation material from all the prior lawsuits and parallel PTO proceedings) to the PTO and make amendments to its patent claims facially directed at undermining Google's non-infringement and invalidity positions from the ongoing district court litigation. In doing so, SimpleAir attempted to modify the language of its pending claims so that it could try to argue those new claims are distinct from the prior claims, which were found by the Federal Circuit to be confined to the actual scope of SimpleAir's original invention (and not infringed by Google).

32.    Despite its express attempt to broaden the scope of its claims through amendments, SimpleAir failed to disclose the April 1, 2016 Federal Circuit opinion in *SimpleAir I*. As discussed above, the Federal Circuit opinion expressly rejected

COMPLAINT

SimpleAir's attempts to broaden the scope of its patents through creative drafting, declined to give language SimpleAir added in 2004 (*i.e.*, eight years after the 1996 priority date) any meaning for the purpose of broadening SimpleAir's patent claims, and held that Google does not infringe and Google's GCM services (which only send messages over the Internet) do not meet the claim limitations as a matter of law.

33.   In its opinion, the Federal Circuit focused on the specification's disclosure of "the present invention" which "provides a system and method for communication connection online networks with online **and off-line computers**." Ex. B (Slip Op. at 18) (emphasis in original).  The Federal Circuit held that the "patent's description of the invention" must give meaning to the claims and thus, foreclosed an interpretation of SimpleAir's patent claims as reading on Google's GCM services, which "send[] messages over the same communication path as other Internet data–it does not use a separate path"—and therefore a remote device that is not connected to the Internet will not receive messages.  *Id*. at 20.  The Federal Circuit further found that the written description of the patent was directed to the "use of two distinct paths" for data and did not contemplate the system advocated by SimpleAir in litigation, whereby data may transmitted over a single pathway (*i.e.*, only over the Internet or an online service).  *Id*. at 16, 20.

34.   Though the Federal Circuit opinion provides clear, material guidance regarding the appropriate scope of SimpleAir's invention, SimpleAir failed to disclose the opinion to the PTO.  SimpleAir's failure to disclose the binding *SimpleAir I* opinion was done with knowledge of its materiality.  Throughout the prosecution of its many continuation patents, SimpleAir has regularly disclosed litigation material, including hundreds of documents from *SimpleAir I*, *SimpleAir II/III*, and the parties' parallel adversarial actions before the PTO.  The Examiner has taken the parallel district court proceedings into consideration in several

- 14 -

instances, including staying prosecution of SimpleAir's applications pending resolution of the *SimpleAir II/III* litigation. When it has been useful to SimpleAir, SimpleAir has taken the opportunity of the ongoing prosecution to submit hundreds of references and other litigation documents to the PTO in an effort to reduce the impact of such materials in subsequent potential litigation. But when the Federal Circuit issued an opinion expressly holding that SimpleAir's "**present invention**" must enable "remote computer 14 [to] receive information instantly–**even when it is offline (i.e., not connected to the Internet** or some other online service . . . .")**, SimpleAir did not disclose this highly material evidence regarding its patent claims. *Id*. at 17 (emphasis in original).

35.    Had SimpleAir disclosed the Federal Circuit opinion, the Examiner would either have rejected many, if not all, of the claims of the '899 Patent as lacking written description support, not enabled, indefinite, and/or invalid over the plethora of cited prior art that discloses two-pathway systems (which, notably, were not substantively examined by the Examiner during prosecution).

### SimpleAir Is Barred From Re-Litigating Its Cause Of Action Again

36.    The '899 Patent is also unenforceable as against Google because, as set forth above, Google has been exonerated of infringing patents from the same patent family at least twice–in decisions on the merits, which concluded in final judgments in Google's favor (against SimpleAir). SimpleAir is precluded from re-litigating its cause of action for infringement of the patented invention any further.

### COUNT ONE

### (Declaration of Non-Infringement of One Or More Claims of the '899 Patent)

37.    Google restates and incorporates by reference the allegations in paragraphs 1 through 34 of this Complaint as if fully set forth herein.

38.    On information and belief, SimpleAir claims to own all rights, title, and interest in the '899 Patent. A true and correct copy of the '899 Patent shall be

COMPLAINT

1  submitted once it becomes publicly available.  A true and correct copy of the Issue

2  Notification is attached hereto as **Exhibit A**.

3    39.    The '899 Patent has four independent claims: claims 1, 11, 21, and 31.

4    40.    Claim 1 of the '899 Patent recites:

5    A server system for causing data to be transmitted to selected remote
   computing devices comprising:

6    a first gateway configured to receive data from plural
   information providers, wherein each information provider

7    comprises a provider of one or more related categories or
   subcategories of information;

8

9    one or more parsers comprising computer software programs,
   routines or functions configured to break or divide at least some

10   of the data received from the information providers into
   components whose content or format can be analyzed, processed,
   or acted upon;

11

12   a second gateway configured to build data blocks from the data,
   and to assign addresses to the data blocks, wherein the data

13   blocks include sufficient information to be effectively
   communicated to a third gateway configured to prepare the data

14   blocks for transmission as messages to the selected remote
   computing devices to be viewed by viewers specific to the

15   information providers in each of the selected remote computing
   devices.

16

17   41.    Claim 11 of the '899 Patent recites:

     A method for causing data to be transmitted to selected remote
18   computing devices comprising:

19   a first gateway receiving data from plural information providers,
   wherein each information provider comprises a provider of one

20   or more related categories or subcategories of information;

21   one or more parsers breaking or dividing at least some of the data
   received from the information providers into components whose

22   content or format can be analyzed, processed, or acted upon;

23   a second gateway building data blocks from the data and
   assigning addresses to the data blocks, wherein the data blocks

24   include sufficient information to be effectively communicated to
   a third gateway configured to prepare the data blocks for

25   transmission as messages to the selected remote computing
   devices to be viewed by viewers specific to the information

26   providers in each of the selected remote computing devices.

27

28

- 16 -

42.     Claim 21 of the '899 Patent recites:

A method for transmitting data to selected remote devices, comprising the steps of:

a central broadcast server receiving data from plural information sources;

preprocessing the data at the central broadcast server, further comprising the step of:

parsing at least some of the data with parsers corresponding to the central broadcast server;

transmitting the data to an information gateway for building data blocks and assigning addresses to the data blocks, wherein the data blocks include sufficient information to be effectively communicated to a first gateway configured to prepare the data blocks for transmission as messages to the selected remote devices whether the selected remote devices are online or offline from a data channel to the information source from which the data was received.

43.     Claim 31 of the '899 Patent recites:

A server system for causing data to be transmitted data to selected remote devices, comprising:

a central broadcast server configured to receive data from plural information sources;

one or more parsers at the central broadcast server comprising computer software programs, routines or functions configured to parse at least some of the data;

a first gateway configured to transmit the data to an information gateway for building data blocks and assigning addresses to the data blocks, wherein the data blocks include sufficient information to be effectively communicated to a second gateway configured to prepare the data blocks for transmission as messages to the selected remote computing devices whether the selected remote devices are online or offline from a data channel to the information source from which the data was received.

44.     Google does not directly or indirectly infringe the '899 Patent, either literally or under the doctrine of equivalents, at least because its GCM services:  (1) do not employ, incorporate, or otherwise make use of "assign[ing] addresses" or "assign[ing] addresses to data blocks," as required by every claim of the '899 Patent; (2) do not employ, incorporate, or otherwise make use of "one or more

parsers [] breaking or dividing at least some of the data received from the information providers into components whose content or format can be analyzed, processed, or acted upon" as required by independent claims 1 and 11 of the '899 Patent; (3) do not employ, incorporate, or otherwise make use of "viewers specific to the information providers" as required by independent claims 1 and 11 of the '899 Patent; (4) do not employ, incorporate, or otherwise make use of a transmission to "selected remote computing devices … whether the selected remote devices are online or offline from a data channel to the information source from which the data was received," as required by independent claims 21 and 31 of the '899 Patent.

45.     A substantial, immediate, and real controversy exists between Google and SimpleAir regarding whether Google infringes the '899 Patent by making, using, selling, and/or offering for sale GCM services.  A judicial declaration is necessary to determine the parties' respective rights regarding the '899 Patent.

46.     Google seeks a judgment declaring that Google does not infringe, either literally or under the doctrine of equivalents, one or more claims of the '899 Patent by making, using, selling, and/or offering for sale GCM services, either directly under  35 U.S.C. § 271(a), or indirectly under 35 U.S.C. §§ 271(a) and (c).

## COUNT TWO

### (Declaration of Unenforceability of the '899 Patent)

### (Against All Defendants)

47.     Google restates and incorporates by reference the allegations in paragraphs 1 through 34 of this Complaint as if fully set forth herein.

48.     An immediate, real, and justiciable controversy exists between Google and Defendants regarding the enforceability of the '899 Patent.

49.     Google seeks a judgment declaring that the claims of the '899 Patent are unenforceable under the doctrine of inequitable conduct.  Though SimpleAir was aware during its prosecution that it was including inventors who did not (and could

not have) jointly conceived of the claimed invention, it nonetheless included the same inventors on the '899 Patent as in all Previously Asserted Patents and did not make any effort to correct the inventorship issues or even apprise the Examiner that an inventorship challenge had been raised.  SimpleAir also withheld material evidence during prosecution of the '899 Patent, including the Federal Circuit opinion, which expressly held that SimpleAir's invention is circumscribed to a "system and method for data communication connecting on-line networks with online and *offline computers*."  Ex. B at 18 (emphasis in original).

50.     On information and belief, if the PTO had learned of the false statements the named inventors submitted in support of the Previously Asserted Patent applications and/or of the material evidence that SimpleAir withheld during prosecution, the PTO would not have issued the '899 Patent.  As a result, the inventors obtained the patent by knowingly and willfully misrepresenting facts to the PTO.

51.     Google further seeks a judgment declaring that the claims of the '899 Patent are unenforceable against it due to SimpleAir's prior litigations against Google and others including based on the doctrines of estoppel, waiver, res judicata, *Kessler*, license and/or exhaustion.

## PRAYER FOR RELIEF

WHEREFORE, Google prays for judgment and relief as follows:

A.     Declaring that Google does not directly or indirectly infringe the '899 Patent, either literally or under the doctrine of equivalents, and that it is not liable for damages or injunctive relief based on any claim of the '899 Patent;

B.     Declaring that the '899 Patent is unenforceable against Google;

C.     Declaring that judgment be entered in favor of Google and against SimpleAir and/or all defendants on each of Google's claims;

D.     Finding that this an exceptional case under 35 U.S.C. § 285;

1    E.    Awarding Google its costs and attorneys' fees in connection with this

2 action; and

3    F.    Such further and additional relief as the Court deems just and proper.

4

5                               **<u>JURY DEMAND</u>**

6      Google demands a jury trial on all issues and claims so triable.

7 DATED: May 30, 2016          Respectfully submitted,

8                               QUINN EMANUEL URQUHART & SULLIVAN,
                                LLP
9

10

11  By _____

12

13                              Michael D. Powell
                                *Attorneys for Google Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28